UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVERTEST, LLC d/b/a Averhealth,
a Virginia limited liability company,        Case No.
                                             Hon.
    Plaintiff,                           Magistrate Judge

vs.

LIVINGSTON COUNTY, a
Michigan body politic,

    Defendant.

---

PLUNKETT COONEY
Patrick Lannen (P73031)
Michael J. Barton (P34509)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000
plannen@plunkettcooney.com

---

## COMPLAINT AND JURY DEMAND

    There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint, nor has any such action been previously filed and dismissed.

        /s/ Patrick C. Lannen (P73031)
            Patrick C. Lannen

Plaintiff, Avertest, LLC d/b/a Averhealth, a Virginia limited liability company ("Averhealth" or "Plaintiff"), through its attorneys, Plunkett Cooney, for its complaint in this matter, states:

## THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Averhealth is a Virginia limited liability company, maintaining its principal place of business at 1700 Bayberry Court, Richmond, Virginia.

2. All of Averhealth's members are citizens, and domiciliaries, of the Commonwealth of Virginia, the State of Missouri, the State of Illinois, or the State of Nevada.

3. Defendant County of Livingston ("Livingston" or the "County") is a Michigan body politic with its county clerk office located at 200 E. Grand River Ave., Howell, Michigan, 48843.

4   This Court has diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. Venue is proper in this court under 28 U.S.C. §1391(a)–(b).

2

## COMMON ALLEGATIONS

### I. Request For Proposal

6. In the spring of 2018, Livingston engaged in a request for proposal for bids from private companies to provide drug and alcohol testing services for its courts.

7. At that time, the contract term between the County's then provider of drug and alcohol testing and the County was set to expire on June 1, 2018.

8. Averhealth submitted its proposal on Monday, April 30, 2018 and performed an in-person demonstration and presentation for the County on Friday, May 4, 2018.

### II. Selection of Averhealth

9. On Tuesday, May 8, 2018, Roberta Sacharski and Sarah Applegate, two members of the four person Livingston County evaluation committee, informed Averhealth CEO, Jason Herzog, that they were impressed with the Averhealth proposal and that the evaluation committee unanimously selected Averhealth to perform Livingston's Drug and Testing Services for the courts.

10. The Agenda for the meeting of the County Board of Commissioners shows that on May 21, 2018 a resolution was passed selecting Averhealth as the County's service provider for court drug and alcohol testing.

3

11.  The resolution is numbered "2018-05-97."

### III.  The Resolution

12.  The resolution is titled "Resolution Authorizing an Agreement with Averhealth to Provide Drug and Alcohol Testing Services – Court Central Services & District Court."

13.  The resolution recited that the County has "a need for drug and alcohol testing services."

14.  The resolution further recited that "in accordance with the County's Purchasing Policy, a formal quoting process was performed and the submitted quotes were evaluated."

15.  The resolution also recited that Averhealth "submitted a quote that will provide the drug and alcohol testing at the attached rates for the period of June 2, 2018 through September 30, 2019, with an option for a one-year renewal."

16.  The resolution also recited that "funding for same is available through the Court Central Services' state and federal grants through the District Court budget."

17.  The resolution further stated "THEREFORE BE IT RESOLVED that the Livingston County Board of Commissioners hereby authorizes entering into an agreement with Averhealth for drug and alcohol testing services at the

4

attached rates for the period of June 2, 2018 through September 30, 2018 (sic), together with an option for a one-year renewal for services described above."

18.  The resolution further provided that "BE IT FURTHER RESOLVED that the Chairman of the Livingston County Board of Commissioners is authorized to sign all forms, assurances, contracts/agreements, renewals and future amendments for monetary and contract language adjustments to the above upon review and/or preparation of Civil Counsel."

### IV.  The Memorandum

19.  Attached to the resolution is a "Memorandum" to the County Board of Commissioners from Sara Applegate, the then "Court Programs Liaison," dated May 11, 2018 that includes a "re" line stating "Resolution Authorizing an Agreement with Averhealth to Provide Drug and Alcohol Testing Services – COURT CENTRAL SERVICES & DISTRICT COURT."

20.  The "Memorandum" further provides that the County's "Courts worked with County Purchasing on a bidding process.  Four bids were received from DNA, Phamatech, All County Testing, and Averhealth."

21.  The "Memorandum" further provided that a "team from the Courts reviewed the bids, met with each bidder, and made a decision based on criteria that included:

5

      a. Ability to meet the needs of the court as articulated in the Request for Proposal (RFP);

      b. Drug test pricing, including the prices charged for contracted cases and for self-pay cases;

      c. Experience with the provider, including references; and

      d. Any services that the provider could provide over and above what was requested in the RFP and the perceived benefits of those services."

22. The "Memorandum" further provided that "[b]ased on this review, the Court recommends that the contract for grant funded and District Court funded drug and alcohol testing services be awarded to Averhealth. This would be for one year and four months, beginning June 2, 2018. Any payment for drug testing services is subject to availability of grant funds and District Court funds. Thank you for your consideration in this matter."

23. Also attached to the resolution is the pricing schedule from Plaintiff.

24. Also on May 21, 2018, the County resolved to apply for funds awarded by the State Court Administrative Office for operating individual specialty courts for fiscal year 2019.

**V.      Approval Delivered by County to Averhealth**

25.    Consistent with the resolution and County Agenda reflecting the approval of the resolution, on May 25, 2018, Sara Applegate sent an email to Plaintiff stating that the resolution to contract with Averhealth was approved by the County Commissioners, and that soon the County would send a contract.

26.    In this E-mail, Applegate specifically indicated that the County is approving a "new location" for Averhealth to perform the County paid for drug and alcohol testing services.

27.    Applegate stated that an "attached" resolution approved the new location and a contract will follow in the near future.

28.    Finally, Applegate requested Averhealth to provide a signed copy of the lease agreement for the building location where the drug and alcohol testing services would be performed so that she could "let everyone know about the new testing location."

29.    Relying on the direction of Sara Applegate, Averhealth signed a $74,692.44 lease agreement for a building in which it was to provide its County awarded services.

## VI. Performance of Services

30. From May 8 to June 2, 2018, Averhealth and Livingston corresponded daily via conference calls, emails, meetings, and training sessions.

31. Given the awarding of the contract on May 21, 2018 and the County requirement for Averhealth, with its principal office in Virginia, to begin providing the testing services on June 2, 2018, these daily communications and a flurry of activity that followed were expected by both parties to occur.

32. In fact, Averhealth actually provided for the County testing services from June 2, 2018 through June 7, 2018.

33. To do so, Averhealth was required to hire employees, all of whom were paid for their time performing services from June 2, 2018 through June 7, 2018.

34. To get the employees to the County in time to perform the services, Averhealth incurred various travel, hotel, and meal expenses for the employees.

35. Averhealth also incurred site build out expenses to make the County approved location adequate to complete the testing.

36. Averhealth also incurred the costs of purchasing required supplies.

8

## VII. "Termination"

37. Then, on June 7, 2018, Livingston sent a notice to Averhealth indicating that it would discontinue the relationship, without any legitimate basis stated.

38. Averhealth replied with an invoice indicating startup costs incurred for entering into the lease agreement and providing services exceeded $112,000.00.

39. Livingston has indicated that it will not pay Averhealth for any expenses incurred.

40. Livingston through counsel has provided an incomprehensible explanation for not paying Averhealth after awarding Plaintiff the contract, instructing Plaintiff in writing to sign a lease with a third-party landlord, and after Plaintiff actually performed the contract until Livingston baselessly terminated Plaintiff.

41. For example, and not by way of limitation, the County states that Plaintiff did not "provide the necessary services," but the County fails to identify even one contracted for service that was not provided.

42. The County further misstated that "Addendum 2 of the RFP requires GC/MS confirmation" where even a cursory review of Addendum 2 of the RFP shows that GC/MS testing is a preference, not a requirement.

43. The County also misstated that rather than providing "confirmation" testing, Averhealth only provided "screening" testing that does not meet the County's court requirements.

44. That statement is demonstrably false; Averhealth actually provided confirmation services to the County.

45. The County also falsely defends that Averhealth's services were only offered at higher rates than those bid by Averhealth in the request for proposal.

46. This, too, is false.  The rates were clearly stated and agreed to by the County in awarding the contract.  The only higher rates offered, which were accepted and approved by resolution, came when the County's courts changed their requested workday from 9 hours to 13 hours on May 8, 2018, and requested a panel from "screen only" to "screen and automatic confirmation."  Neither was such provision was within the RFP, nor in the proposal, and would have nothing to do with the pricing originally proposed.

47. Additionally, the County misrepresents in declining to pay Plaintiff the $112,547.99 plus attorneys' fees that are owed that Averhealth failed to procure a promised location for performing its services.  This statement is false for a number of reasons.  One is that on May 25, Ms. Applegate sent Mr.

10

Herzog an email stating that the resolution had been approved. Ms. Applegate's email stated the following:

> Good morning. Per our conversation today, we are approving the new location and have attached the resolution to show that it was approved and a contract will follow in the near future. Please e-mail me a copy of the lease agreement once it is signed so I may let everyone know about the new testing location.

48. Quite obviously, the County approved the ultimate location and instructed Averhealth to sign a lease.

49. If that was not enough, Averhealth also was clear with the County during the RFP that it had proposed locations within 3 and 5 miles respectively from the physical County courthouse.

50. It was only during the in-person presentation that Averhealth indicated it was in discussions for a location within one mile. Averhealth never represented it had the definitive ability to enter a lease agreement for that space. That landlord later leased that space to a relative instead of Plaintiff.

51. Averhealth ultimately leased a location within 1.4 miles from the courthouse with County written authorization.

52. Today, the County has contracted with a prior vendor, not coincidentally for the exact amount that vendor previously charged the

11

County, meaning there has been no savings of tax payer dollars whatsoever, which operates out of a location that is 2.2 miles from the courthouse.

53. Additionally, the County has falsely stated that Averhealth's testing practices were "actually contrary to and inconsistent with" the practices that the County was advised would be used. This statement is false because Plaintiff actually delivered the services exactly as described in its 32-page winning proposal. Again, no specific improper practices are identified because there are none.

54. Further, the County defends its contract breach and misconduct by stating that it received "numerous complaints" about procedures used and the lack of respect shown for the participants' privacy. Again, zero, not one, example is cited.

55. Finally, the County has hinted at its contract defense, but that defense is utterly lacking in merit. The County states that it is not responsible for any costs of a "proposer" in an RFP. The $112,547.99 owed by the County to Averhealth is for services and costs *actually* rendered *after* the award of the contract and after various written direction to perform and sign a lease by the County.

56. Further, the County's defense that no contract was actually formed since the County failed to send a proposed agreement is legally meaningless.

12

The County instructed Averhealth to, and Averhealth did, actually perform after being awarded the contract, after the County Board of Commissioners authorized and adopted the resolution authorizing the contract, and after telling Averhealth to fly to Michigan, hire and train employees, lodge employees, perform services and sign a lease. The idea that there was no enforceable agreement or that the County is not liable for costs and services advanced and provided is lacking in merit.

## COUNT I
## BREACH OF EXPRESS CONTRACT

57. Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

58. Averhealth and the County had an express agreement for Averhealth to perform and the County to pay for drug and alcohol testing and the costs and fees incurred therewith, as set forth above, with specific agreed upon sums for each test.

59. Averhealth actually performed the testing with County approval but the County breached the parties' agreement by failing to pay for the testing and all of the costs and fees incurred therewith.

60. Averhealth has been damaged as a result.

WHEREFORE, Averhealth requests that the County award it a money judgment in the amount of $112,514.99 plus costs and attorneys' fees, and other relief.

## COUNT II
## BREACH OF IMPLIED IN FACT AGREEMENT

61. Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

62. Pursuant to applicable law, a contract may be implied by the conduct of the parties to it and the surrounding circumstances.

63. Averhealth and the County had an implied in fact agreement for Averhealth to perform and the County to pay for drug and alcohol testing and the costs and fees incurred therewith, as set forth above, with specific agreed upon sums for each test.

64. Averhealth actually performed the testing with County approval but the County breached by failing to pay for the testing and all of the costs and fees incurred therewith.

65. Averhealth has been damaged as a result.

66. As described above, Defendant, through its agent Sara Applegate, also stated to Plaintiff that its proposal was accepted unanimously, a written contract was imminent, and instructed Plaintiff to provide a copy of a lease

14

agreement for the building where services would be conducted once it was signed. Over the ensuing weeks, Plaintiff and Defendant corresponded daily; Plaintiff in fact signed the lease agreement.

67. Each party intended that a contract be formed, and acted as though a contract had been formed.

68. Defendant breached the implied contract with Plaintiff when it sent a notice to discontinue the relationship without a basis and when it failed to pay for the costs and fees agreed to an owed.

69. Plaintiff has been damaged as a result.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor, and against the Defendant, in the amount of 112,547.99, together with costs and attorney fees incurred, and interest thereon.

## COUNT III
## QUANTUM MERUIT/BREACH OF IMPLIED CONTRACT IN LAW

70. Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

71. Pursuant to applicable law, a contract may be implied in law to avoid injustice and/or to avoid unjust enrichment.

15

72. Averhealth provided a benefit to the County by leasing the real estate that the County directed Plaintiff to lease and by Plaintiff actually performing drug and alcohol testing for the County.

73. In would be inequitable to for the County not to pay to Plaintiff the actual costs and fees incurred by the Plaintiff.

74. Plaintiff has been damaged as a result.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor, and against the Defendant, in the amount of 112,547.99, together with costs and attorney fees incurred, and interest thereon.

## COUNT IV
## PROMISSORY ESTOPPEL

73. Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

74. Defendant explicitly informed Plaintiff that its bid was unanimously selected, specified that a "Resolution Authorizing an Agreement with Averhealth…" had been approved, and requested Plaintiff to provide Defendant with alternate signed lease agreement of the location where drug and alcohol testing would be done.

75. Defendant's promises were clear, definite, and unequivocal and were specifically made to induce Plaintiff into signing a lease agreement with

a third party and incurring additional startup costs, and actually performing services under a County awarded agreement for drug and alcohol testing.

76. In reliance on Defendant's promises, and to its substantial detriment, Plaintiff signed a lease agreement at the direction of Defendant's agent, and incurred significant costs in hiring employees, all of whom were paid for their time performing services from June 2, 2018 through June 7, 2018, and in advancing various travel, hotel, and meal expenses for the employees.

77. Averhealth also incurred site build out expenses to make the County approved location adequate to complete the testing.

78. Averhealth also incurred the costs of purchasing required supplies.

79. Despite Plaintiff's requests and demands to Defendant for reimbursement of the lease agreement cost and additional startup costs, Defendant refuses to pay Plaintiff for reimbursement of any costs incurred.

80. To avoid injustice, this Court must specifically enforce Defendant's promises to pay costs to Plaintiff, to pay for the reasonable value and expenses incurred with the performance of services, and to compensate Plaintiff for all of its actual activities.

81. At the time of making the promises and inducing the action on Plaintiff's part, Defendant could reasonably foresee that its failure to perform pursuant to the promises would cause the damages Plaintiff has suffered.

82. As a direct and proximate result of Defendant's failure to perform as promised, Plaintiff has suffered monetarily, excluding attorney fees.

83. Plaintiff is entitled to a judgment of this Court compelling the Defendant to refund Plaintiff's costs, interest, out-of-pocket expenses, value of services rendered, and attorney fees.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor, and against the Defendant, in the amount of 112,547.99, together with costs and attorney fees incurred, and interest thereon.

Respectfully Submitted,

/s/ Patrick C. Lannen
PLUNKETT COONEY
Patrick Lannen (P73031)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000
plannen@plunkettcooney.com

Dated: November 12, 2018

## JURY DEMAND

Plaintiff, Averhealth, hereby demands trial by jury in this matter.

        Respectfully Submitted,

        /s/ Patrick C. Lannen
        PLUNKETT COONEY
        Patrick Lannen (P73031)
        Michael J. Barton (P34509)
        Attorneys for Plaintiff
        38505 Woodward Avenue, Suite 2000
        Bloomfield Hills, MI 48304
        (248) 901-4000
        plannen@plunkettcooney.com

Dated: November 12, 2018