UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

_____

AVERTEST, LLC, d/b/a
AVERHEALTH                                    Case No. 2:18-CV-13511

                        Plaintiff,            Hon. Linda V. Parker

v                                             **DEFENDANT'S ANSWER TO
                                              COMPLAINT, AND AFFIRMATIVE
LIVINGSTON COUNTY,                            DEFENSES**

                        Defendant.

_____

Patrick Lannen (P73031)                  Timothy M. Perrone (P37940)
Michael J. Barton (P34509)               COHL, STOKER & TOSKEY, P.C.
PLUNKETT COONEY                          Attorneys for Defendant
Attorneys for Plaintiff                  601 N. Capitol Ave.
38505 Woodward Ave., Suite 2000          Lansing, MI 48933
Bloomfield Hills, MI 48304               (517) 372-9000
(248) 901-4000                           tperrone@cstmlaw.com
plannen@plunkettcooney.com

_____

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, Livingston County, by and through its attorneys, COHL, STOKER &

TOSKEY, P.C., answers Plaintiff's Complaint and Jury Demand as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Averhealth is a Virginia limited liability company, maintaining its

principal place of business at 1700 Bayberry Court, Richmond, Virginia.

**Answer:        Neither admitted nor denied, as Defendant lacks sufficient knowledge
of the facts to form a belief as to the truth of the matter asserted.**

2.      All of Averhealth's members are citizens, and domiciliaries, of the

Commonwealth of Virginia, the State of Missouri, the State of Illinois, or the State of Nevada.

**Answer:**     **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

3.     Defendant County of Livingston ("Livingston" or the "County") is a Michigan body politic with its county clerk office located at 200 E. Grand River Ave., Howell, Michigan, 48843.

**Answer:**     **Admitted.**

4.     This Court has diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**Answer:**     **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

5.     Venue is proper in this court under 28 U.S.C. §1391(a)-(b).

**Answer:**     **Admitted.**

## COMMON ALLEGATIONS

**I.     Request For Proposal**

6.     In the spring of 2018, Livingston engaged in a request for proposal for bids from private companies to provide drug and alcohol testing services for its courts.

**Answer:**     **Admitted.**

7.     At that time, the contract term between the County's then provider of drug and alcohol testing and the County was set to expire on June 1, 2018.

**Answer:**     **Admitted.**

8.     Averhealth submitted its proposal on Monday, April 30, 2018 and performed an in-person demonstration and presentation for the County on Friday, May 4, 2018.

**Answer:**     **Admitted.**

2

II.      **Selection of Averhealth**

9.      On Tuesday, May 8, 2018, Roberta Sacharski and Sarah Applegate, two members of the four person Livingston County evaluation committee, informed Averhealth CEO, Jason Herzog, that they were impressed with the Averhealth proposal and that the evaluation committee unanimously selected Averhealth to perform Livingston's Drug and Testing Services for the courts.

**Answer:      Admitted, except that Plaintiff's representative was only told that the evaluation committee unanimously selected Plaintiff to move forward in the bidding process, where it was specifically stated that the award was contingent upon County Board approval and a successfully negotiated contract.**

10.      The Agenda for the meeting of the County Board of Commissioners shows that on May 21, 2018 a resolution was passed selecting Averhealth as the County's service provider for court drug and alcohol testing.

**Answer:      Denied as untrue that the Agenda for the meeting shows a Resolution was passed.  Admitted that a Resolution was adopted authorizing the County to enter into an Agreement with Averhealth.**

11.      The resolution is numbered "2018-05-97."

**Answer:      Admitted.**

III.      **The Resolution**

12.      The resolution is titled "Resolution Authorizing an Agreement with Averhealth to Provide Drug and Alcohol Testing Services - Court Central Services & District Court."

**Answer:      Admitted.**

3

13.     The resolution recited that the County has "a need for drug and alcohol testing services."

**Answer:        Admitted.**

14.     The resolution further recited that "in accordance with the County's Purchasing Policy, a formal quoting process was performed and the submitted quotes were evaluated."

**Answer:        Admitted.**

15.     The resolution also recited that Averhealth "submitted a quote that will provide the drug and alcohol testing at the attached rates for the period of June 2, 2018 through September 30, 2019, with an option for a one-year renewal."

**Answer:        Admitted.**

16.     The resolution also recited that "funding for same is available through the Court Central Services' state and federal grants through the District Court budget."

**Answer:        Admitted.**

17.     The resolution further stated "THEREFORE BE IT RESOLVED that the Livingston County Board of Commissioners hereby authorizes entering into an agreement with Averhealth for drug and alcohol testing services at the attached rates for the period of June 2, 2018 through September 30, 2018 (sic), together with an option for a one-year renewal for services described above."

**Answer:        Admitted.**

18.     The resolution further provided that "BE IT FURTHER RESOLVED that the Chairman of the Livingston County Board of Commissioners is authorized to sign all forms, assurances, contracts/agreements, renewals and future amendments for monetary and contract language adjustments to the above upon review and/or preparation of Civil Counsel."

4

**Answer:**     **Admitted.**

### IV.    The Memorandum

19.     Attached to the resolution is a "Memorandum" to the County Board of Commissioners from Sara Applegate, the then "Court Programs Liaison," dated May 11, 2018 that includes a "re" line stating "Resolution Authorizing an Agreement with Averhealth to Provide Drug and Alcohol Testing Services - COURT CENTRAL SERVICES & DISTRICT COURT."

**Answer:**     **Admitted.**

20.     The "Memorandum" further provides that the County's "Courts worked with County Purchasing on a bidding process. Four bids were received from DNA, Phamatech, All County Testing, and Averhealth."

**Answer:**     **Admitted.**

21.     The "Memorandum" further provided that a "team from the Courts reviewed the bids, met with each bidder, and made a decision based on criteria that included:

a.  Ability to meet the needs of the court as articulated in the Request for Proposal (RFP);

b.  Drug test pricing, including the prices charged for contracted cases and for self-pay cases;

c.  Experience with the provider, including references; and

d.  Any services that the provider could provide over and above what was requested in the RFP and the perceived benefits of those services."

**Answer:**     **Admitted.**

5

22.     The "Memorandum" further provided that "[b]ased on this review, the Court recommends that the contract for grant funded and District Court funded drug and alcohol testing services be awarded to Averhealth. This would be for one year and four months, beginning June 2, 2018. Any payment for drug testing services is subject to availability of grant funds and District Court funds. Thank you for your consideration in this matter."

**Answer:        Admitted.**

23.     Also attached to the resolution is the pricing schedule from Plaintiff.

**Answer:        Admitted.**

24.     Also on May 21, 2018, the County resolved to apply for funds awarded by the State Court Administrative Office for operating individual specialty courts for fiscal year 2019.

**Answer:        Admitted.**

**V.      Approval Delivered by County to Averhealth**

25.     Consistent with the resolution and County Agenda reflecting the approval of the resolution, on May 25, 2018, Sara Applegate sent an email to Plaintiff stating that the resolution to contract with Averhealth was approved by the County Commissioners, and that soon the County would send a contract.

**Answer:        Admitted only that Ms. Applegate sent an email to show Plaintiff that the Resolution was approved which authorized an agreement with Plaintiff, and that a contract would follow in the near future.  Denied as untrue that Ms. Applegate said that the County would send a contract.**

26.     In this E-mail, Applegate specifically indicated that the County is approving a "new location" for Averhealth to perform the County paid for drug and alcohol testing services.

**Answer:      Admitted.  By way of further answer, one of the deciding factors in selecting Plaintiff on May 8, 2018 to continue in the process was the convenient location proposed by Plaintiff.  On May 24, 2018, when Plaintiff notified the County that its location had changed to a farther-away, less-desirable location, the County approved the new location in the interests of moving forward, as several weeks had already been spent on the process, and services were needed to begin by June 2, 2018.**

27.    Applegate stated that an "attached" resolution approved the new location and a contract will follow in the near future.

**Answer:      Admitted only that Ms. Applegate stated that a contract will follow in the near future.  Denied as untrue that the Resolution approved the new location.**

28.    Finally, Applegate requested Averhealth to provide a signed copy of the lease agreement for the building location where the drug and alcohol testing services would be performed so that she could "let everyone know about the new testing location."

**Answer:      Admitted.**

29.    Relying on the direction of Sara Applegate, Averhealth signed a $74,692.44 lease agreement for a building in which it was to provide its County awarded services.

**Answer:      Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

**VI.    Performance of Services**

30.    From May 8 to June 2, 2018, Averhealth and Livingston corresponded daily via conference calls, emails, meetings, and training sessions.

**Answer:      Admitted that the parties engaged in frequent communications during the stated time period, but denied as untrue that the communication was daily.  By way of**

7

**further answer, many concerns were expressed in these communications, and the parties continued to negotiate the terms of a proposed contract.**

31.    Given the awarding of the contract on May 21, 2018 and the County requirement for Averhealth, with its principal office in Virginia, to begin providing the testing services on June 2, 2018, these daily communications and a flurry of activity that followed were expected by both parties to occur.

**Answer:      Denied as untrue that a contract was awarded.  The remainder of the allegations are neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

32.    In fact, Averhealth actually provided for the County testing services from June 2, 2018 through June 7, 2018.

**Answer:      Admitted that Plaintiff provided services by purchase order.**

33.    To do so, Averhealth was required to hire employees, all of whom were paid for their time performing services from June 2, 2018 through June 7, 2018.

**Answer:      Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

34.    To get the employees to the County in time to perform the services, Averhealth incurred various travel, hotel, and meal expenses for the employees.

**Answer:      Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

35.    Averhealth also incurred site build out expenses to make the County approved location adequate to complete the testing.

**Answer:**       **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

36.       Averhealth also incurred the costs of purchasing required supplies.

**Answer:**       **Denied as untrue that the County required Plaintiff to purchase supplies.  The remaining allegations are neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

**VII.   "Termination"**

37.       Then, on June 7, 2018, Livingston sent a notice to Averhealth indicating that it would discontinue the relationship, without any legitimate basis stated.

**Answer:**       **Admitted that Defendant gave notice to Plaintiff that it would not be contracting with Plaintiff for drug testing services, but denied as untrue that no legitimate basis was stated.**

38.       Averhealth replied with an invoice indicating startup costs incurred for entering into the lease agreement and providing services exceeded $112,000.00.

**Answer:**       **Admitted.**

39.       Livingston has indicated that it will not pay Averhealth for any expenses incurred.

**Answer:**       **Admitted.  By way of further answer, the County paid Plaintiff for all services performed by purchase order from June 2, 2018 to June 7, 2018.**

40.       Livingston through counsel has provided an incomprehensible explanation for not paying Averhealth after awarding Plaintiff the contract, instructing Plaintiff in writing to sign a lease with a third-party landlord, and after Plaintiff actually performed the contract until Livingston baselessly terminated Plaintiff.

9

**Answer:** **Denied as untrue that any contract was awarded, or that Plaintiff was instructed to sign a lease. Admitted that Defendant's counsel sent a letter in response to Plaintiff's claim for payment. All remaining allegations are denied as untrue.**

41. For example, and not by way of limitation, the County states that Plaintiff did not "provide the necessary services," but the County fails to identify even one contracted for service that was not provided.

**Answer:** **Denied as untrue. By way of further answer, the letter stated that no meeting of the minds occurred, because "during the contract negotiations, it became clear that averhealth would not be able to provide the necessary services, at the appropriate pricing levels, as outline in the RFP and in averhealth's Proposal."**

42. The County further misstated that "Addendum 2 of the RFP requires GC/MS confirmation" where even a cursory review of Addendum 2 of the RFP shows that GC/MS testing is a preference, not a requirement.

**Answer:** **Denied as untrue that Defendant misstated the RFP requirements. By way of further answer, Addendum 2 requires GC/MS confirmation.**

43. The County also misstated that rather than providing "confirmation" testing, Averhealth only provided "screening" testing that does not meet the County's court requirements.

**Answer:** **Denied as untrue that Defendant misstated Plaintiff's failure to meet the requirements.**

44. That statement is demonstrably false; Averhealth actually provided confirmation services to the County.

**Answer:** **Denied as untrue.**

10

45.     The County also falsely defends that Averhealth's services were only offered at higher rates than those bid by Averhealth in the request for proposal.

**Answer:**        **Denied as untrue.**

46.     This, too, is false. The rates were clearly stated and agreed to by the County in awarding the contract. The only higher rates offered, which were accepted and approved by resolution, came when the County's courts changed their requested workday from 9 hours to 13 hours on May 8, 2018, and requested a panel from "screen only" to "screen and automatic confirmation."  Neither was such provision was within the RFP, nor in the proposal, and would have nothing to do with the pricing originally proposed.

**Answer:**        **Denied as untrue that rates were agreed upon or that a contract was awarded.  By way of further answer, negotiations were ongoing for terms such as an extended work day, and screen confirmations.  The RFP states:  "With approval from the court, clients may test at hours other than the normal testing hours without incurring additional charges."  Plaintiff's proposal addressed this RFP provision by responding: "averhealth will work with the Courts to develop testing hours at its standalone collection location that meets the needs of patients' schedules, including providing early morning and/or late evening collections."**

47.     Additionally, the County misrepresents in declining to pay Plaintiff the $112,547.99 plus attorneys' fees that are owed that Averhealth failed to procure a promised location for performing its services. This statement is false for a number of reasons. One is that on May 25, Ms. Applegate sent Mr. Herzog an email stating that the resolution had been approved. Ms. Applegate's email stated the following:

Good morning. Per our conversation today, we are approving the new location and have attached the resolution to show that it was approved and a contract will follow in the near future. Please e-mail me a copy of the lease agreement once it is signed so I may let everyone know about the new testing location.

**Answer:** **Denied as untrue that the County misrepresented.  Plaintiff did fail to secure the location which the County highly favored in scoring Plaintiff's proposal. Although Plaintiff proposed two locations in its proposal, in the May 4, 2018 in-person interviews it proposed a different, highly desirable location, with pictures of the building, and extolling the advantages of the facility's parking and proximity to the Court.  Plaintiff did not indicate that it had any issues with a lease, or that it might not be able to secure the highly desirable location.  It was not until May 22, 2018, that the County learned that Plaintiff was looking for an alternate location.  On May 25, 2018, Plaintiff notified the County that the desirable location that the County relied upon in continuing negotiations with Plaintiff was no longer an option, and that Plaintiff had selected another, much less-desirable location, further away from the Courts, with limited parking and no visibility for the road.**

48.    Quite obviously, the County approved the ultimate location and instructed Averhealth to sign a lease.

**Answer:** **Admitted that the County reluctantly approved the ultimate location, but denied as untrue that Plaintiff was instructed by the County to sign a lease.**

49.    If that was not enough, Averhealth also was clear with the County during the RFP that it had proposed locations within 3 and 5 miles respectively from the physical County courthouse.

**Answer:** **See Answer to Paragraph 47.**

12

50.     It was only during the in-person presentation that Averhealth indicated it was in discussions for a location within one mile. Averhealth never represented it had the definitive ability to enter a lease agreement for that space. That landlord later leased that space to a relative instead of Plaintiff.

**Answer:      Admitted only that Plaintiff indicated that it had a location within one mile.  Denied that Plaintiff never represented it had the ability to enter into a lease for that space.  Rather, Plaintiff told the selection committee that it had secured the location one mile from the Court, and provided pictures only of that location.  As to any subsequent lease by that landlord, the allegations are neither admitted nor denied, as Defendant lacks knowledge sufficient to form a belief as to the truth of the matter asserted.**

51.     Averhealth ultimately leased a location within 1.4 miles from the courthouse with County written authorization.

**Answer:      Admitted, except denied as untrue that Plaintiff entered the lease "with County written authorization."**

52.     Today, the County has contracted with a prior vendor, not coincidentally for the exact amount that vendor previously charged the County, meaning there has been no savings of tax payer dollars whatsoever, which operates out of a location that is 2.2 miles from the courthouse.

**Answer:      Denied as untrue that the County has contracted with a prior vendor.**

53.     Additionally, the County has falsely stated that Averhealth's testing practices were "actually contrary to and inconsistent with" the practices that the County was advised would be used. This statement is false because Plaintiff actually delivered the services exactly as

13

described in its 32-page winning proposal. Again, no specific improper practices are identified because there are none.

**Answer:**          **Denied as untrue.**

54.     Further, the County defends its contract breach and misconduct by stating that it received "numerous complaints" about procedures used and the lack of respect shown for the participants' privacy. Again, zero, not one, example is cited.

**Answer:**          **Denied as untrue that there was any breach of contract, as no contract was formed.  Admitted that Defendant received complaints about procedures used and the lack of respect shown for participants' privacy.**

55.     Finally, the County has hinted at its contract defense, but that defense is utterly lacking in merit. The County states that it is not responsible for any costs of a "proposer" in an RFP. The $112,547.99 owed by the County to Averhealth is for services and costs actually rendered after the award of the contract and after various written direction to perform and sign a lease by the County.

**Answer:**          **Denied as untrue.**

56.     Further, the County's defense that no contract was actually formed since the County failed to send a proposed agreement is legally meaningless.   The County instructed Averhealth to, and Averhealth did, actually perform after being awarded the contract, after the County Board of Commissioners authorized and adopted the resolution authorizing the contract, and after telling Averhealth to fly to Michigan, hire and train employees, lodge employees, perform services and sign a lease. The idea that there was no enforceable agreement or that the County is not liable for costs and services advanced and provided is lacking in merit.

**Answer:**          **Denied as untrue.**

14

## COUNT I
## BREACH OF EXPRESS CONTRACT

57.     Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

**Answer:     Defendant restates and incorporates by reference the answers to Paragraphs 1 through 56, above, as though fully set forth.**

58.     Averhealth and the County had an express agreement for Averhealth to perform and the County to pay for drug and alcohol testing and the costs and fees incurred therewith, as set forth above, with specific agreed upon sums for each test.

**Answer:     Denied as untrue.**

59.     Averhealth actually performed the testing with County approval but the County breached the parties' agreement by failing to pay for the testing and all of the costs and fees incurred therewith.

**Answer:     Denied as untrue that Defendant failed to pay for any drug testing performed by Plaintiff under a purchase order.**

60.     Averhealth has been damaged as a result.

**Answer:     Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

## COUNT II
## BREACH OF IMPLIED IN FACT AGREEMENT

61.     Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

**Answer:     Defendant restates and incorporates by reference the answers to Paragraphs 1 through 60, above, as though fully set forth.**

15

62.     Pursuant to applicable law, a contract may be implied by the conduct of the parties to it and the surrounding circumstances.

**Answer:       Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.  By way of further answer, there can be no implied contract with a governmental entity such as Defendant.**

63.     Averhealth and the County had an implied in fact agreement for Averhealth to perform and the County to pay for drug and alcohol testing and the costs and fees incurred therewith, as set forth above, with specific agreed upon sums for each test.

**Answer:       Denied as untrue.**

64.     Averhealth actually performed the testing with County approval but the County breached by failing to pay for the testing and all of the costs and fees incurred therewith.

**Answer:       Denied as untrue.**

65.     Averhealth has been damaged as a result.

**Answer:       Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

66.     As described above, Defendant, through its agent Sara Applegate, also stated to Plaintiff that its proposal was accepted unanimously, a written contract was imminent, and instructed Plaintiff to provide a copy of a lease agreement for the building where services would be conducted once it was signed. Over the ensuing weeks, Plaintiff and Defendant corresponded daily; Plaintiff in fact signed the lease agreement.

**Answer:       Denied as untrue.  By way of further answer, Plaintiff was invited, based on its proposal, to participate in an interview, and based upon the interview and information contained in the proposal, Plaintiff was unanimously selected to move forward**

16

in the negotiation process.  **Ms. Applegate merely stated that "a contract will follow in the near future."  Plaintiff was asked to provide a copy of its lease.  The parties communicated frequently, but not daily.  Defendant neither admits nor denies that Plaintiff signed a lease agreement.**

67.     Each party intended that a contract be formed, and acted as though a contract had been formed.

**Answer:          Denied as untrue that Defendant acted as though a contract had been formed.**

68.     Defendant breached the implied contract with Plaintiff when it sent a notice to discontinue the relationship without a basis and when it failed to pay for the costs and fees agreed to an owed.

**Answer:          Denied as untrue.**

69.     Plaintiff has been damaged as a result.

**Answer:          Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

### COUNT III
### QUANTUM MERUIT /BREACH OF IMPLIED CONTRACT IN LAW

70.     Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

**Answer:          Defendant restates and incorporates by reference the answers to Paragraphs 1 through 69, above, as though fully set forth.**

71.     Pursuant to applicable law, a contract may be implied in law to avoid injustice and/or to avoid unjust enrichment.

**Answer:       Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

72.      Averhealth provided a benefit to the County by leasing the real estate that the County directed Plaintiff to lease and by Plaintiff actually performing drug and alcohol testing for the County.

**Answer:       Denied as untrue.**

73.      In would be inequitable to for the County not to pay to Plaintiff the actual costs and fees incurred by the Plaintiff.

**Answer:       Denied as untrue.**

74.      Plaintiff has been damaged as a result.

**Answer:       Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

**COUNT IV**
**PROMISSORY ESTOPPEL**

73 [sic].      Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

**Answer:       Defendant restates and incorporates by reference the answers to Paragraphs 1 through 74, above, as though fully set forth.**

74 [sic].      Defendant explicitly informed Plaintiff that its bid was unanimously selected, specified that a "Resolution Authorizing an Agreement with Averhealth..." had been approved, and requested Plaintiff to provide Defendant with alternate signed lease agreement of the location where drug and alcohol testing would be done.

18

**Answer:** **Denied as untrue, except admitted that the Resolution had been approved, and Plaintiff was asked to provide a copy of its lease. By way of further answer, Plaintiff was invited, based on its proposal, to participate in an interview, and based upon the interview and information contained in the proposal, Plaintiff was unanimously selected to move forward in the negotiation process. Ms. Applegate merely stated that "a contract will follow in the near future."**

75.     Defendant's promises were clear, definite, and unequivocal and were specifically made to induce Plaintiff into signing a lease agreement with a third party and incurring additional startup costs, and actually performing services under a County awarded agreement for drug and alcohol testing.

**Answer:** **Denied as untrue.**

76.     In reliance on Defendant's promises, and to its substantial detriment, Plaintiff signed a lease agreement at the direction of Defendant's agent, and incurred significant costs in hiring employees, all of whom were paid for their time performing services from June 2, 2018 through June 7, 2018, and in advancing various travel, hotel, and meal expenses for the employees.

**Answer:** **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

77.     Averhealth also incurred site build out expenses to make the County approved location adequate to complete the testing.

**Answer:** **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

78.     Averhealth also incurred the costs of purchasing required supplies.

19

**Answer:**        **Neither admitted nor denied, as Defendant lacks sufficient knowledge of the facts to form a belief as to the truth of the matter asserted.**

79.    Despite Plaintiff's requests and demands to Defendant for reimbursement of the lease agreement cost and additional startup costs, Defendant refuses to pay Plaintiff for reimbursement of any costs incurred.

**Answer:**        **Admitted.**

80.    To avoid injustice, this Court must specifically enforce Defendant's promises to pay costs to Plaintiff, to pay for the reasonable value and expenses incurred with the performance of services, and to compensate Plaintiff for all of its actual activities.

**Answer:**        **Denied as untrue.**

81.    At the time of making the promises and inducing the action on Plaintiffs part, Defendant could reasonably foresee that its failure to perform pursuant to the promises would cause the damages Plaintiff has suffered.

**Answer:**        **Denied as untrue.**

82.    As a direct and proximate result of Defendant's failure to perform as promised, Plaintiff has suffered monetarily, excluding attorney fees.

**Answer:**        **Denied as untrue.**

83.    Plaintiff is entitled to a judgment of this Court compelling the Defendant to refund Plaintiffs costs, interest, out-of-pocket expenses, value of services rendered, and attorney fees.

**Answer:**        **Denied as untrue.**

**RELIEF REQUESTED**

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Complaint, with prejudice, award Defendant costs and attorney fees incurred, and grant Defendant such other and further relief as justice may require.

Respectfully submitted,

COHL, STOKER & TOSKEY P.C.

Date: March 1, 2019                    By:  /s/ Timothy M. Perrone
                                            Timothy M. Perrone (P37940)
                                            Attorneys for Defendant
                                            601 N. Capitol Avenue
                                            Lansing, MI 48933
                                            (517) 372-9000

**AFFIRMATIVE DEFENSES**

Defendant Livingston County, by its attorneys, COHL, STOKER & TOSKEY, P.C., states the following Affirmative Defenses in response to Plaintiff's Complaint:

1.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.       Plaintiff's claims are barred by governmental immunity.

3.      No contract was formed, as there was never a meeting of the minds between the parties.

4.      No express contract was entered into between the parties.

5.      The terms and conditions of an alleged agreement were not (a) reduced to writing, (b) approved as to form by the County's attorney, nor (c) signed by the County Board Chair and a representative of Plaintiff.

6.      Plaintiff could not meet the specifications required for the drug testing contract.

21

7.      The Request for Proposals (RFP) states that "Livingston County will not pay for any information herein requested, nor is it liable for any costs incurred by the proposer."

8.      The RFP further states that, "The successful contractor shall commence work only after the transmittal of a fully executed contract and after receiving written notification to proceed from Livingston County."

9.      The RFP also states:  "The successful proposer will perform all services indicated in the RFP and in compliance with the negotiated contract."

10.     Plaintiff's Proposal contained inaccurate information that was detrimentally relied on by the County in adopting a Resolution approving entry into a contract with Plaintiff for drug testing services.

11.     There can be no implied contract where an express contract exists.

12.     There can be no implied contract with a governmental entity.

13.     Plaintiff failed to mitigate its alleged damages.

14.     Plaintiff's claims are barred by the doctrines of waiver, estoppel, unclean hands, and/or laches.

15.     Some or all of Plaintiff's claims are barred by accord and satisfaction, settlement and/or payment and release.

16.     Defendant reserves the right to assert further affirmative defenses as they become known through discovery or otherwise.

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Complaint, with prejudice, award Defendant costs and attorney fees incurred, and grant Defendant such other and further relief as justice may require.

Respectfully submitted,

COHL, STOKER & TOSKEY P.C.

Date: March 1, 2019                    By:  /s/ Timothy M. Perrone_____
                                           Timothy M. Perrone (P37940)
                                           Attorneys for Defendant
                                           601 N. Capitol Avenue
                                           Lansing, MI 48933
                                           (517) 372-9000

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

> Patrick Lannen (P73031)
> Michael J. Barton (P34509)
> PLUNKETT COONEY
> Attorneys for Plaintiff
> 38505 Woodward Ave., Suite 2000
> Bloomfield Hills, MI 48304

COHL, STOKER & TOSKEY, P.C.

By: _s/ Timothy M. Perrone_____
    Timothy M. Perrone (P37940)
    Attorneys for Defendant
    601 N. Capitol Ave.
    Lansing, MI 48933
    (517) 372-9000
    tperrone@cstmlaw.com

N:\Client\Livingston\Litigation\Avertest\Pleadings\Answer to Complaint, Affirm Defenses.doc